The CITY OF SOUTH BEND,
Defendant-Appellant,

v.

The ESTATE of Eugene ROZWARSKI,
Janice Rozwarski, Administratrix,
Plaintiff-Appellee.

No. 3–877A210.

Court of Appeals of Indiana,
Third District.

May 7, 1980.

Rehearing Denied July 28, 1980.

Arthur A. May, May, Searer, Oberfell & Helling, South Bend, for defendant-appellant.

David L. Matthews, South Bend, for plaintiff-appellee.

GARRARD, Presiding Judge.

Eugene Rozwarski, a member of the Fire Department of the City of South Bend, was riding on a platform on the back of a fire truck on an emergency run when the truck collided with a motor vehicle. As a result of the collision, Rozwarski was thrown from the truck to his death.

The fire truck on which Rozwarski was riding was a 1955 Mack. It had a red dome light on top of the cab, a rotating white light on the front grill and a siren. It was not equipped with two alternating flashing red lights located at the same level as required by IC 9–8–6–20. Four firemen were assigned to the truck; an officer and a driver who rode in the cab and a pipe man and a hydrant man who rode on the back platform. The platform, approximately two and a half (2½) feet wide and six (6) feet long, was made of corrugated steel. On each side of the back of the truck there was a skirt which extended out six to eight inches at the top and tapered to a foot at the bottom. Along the skirts were vertical chrome bars measuring approximately one inch in diameter. A similar horizontal bar

was located approximately chin level across the back of the truck. These bars were used by the firemen to stay on the truck. There were no safety belts, straps, harnesses or jumpseats.

All firemen were taught to drive fire trucks. The training consisted of classes and driving around the stadium at the University of Notre Dame. In addition, firemen would drive a truck back to the fire station after emergency runs.

Rozwarski had been a fireman for 19 years and had been assigned to the Twyckenham fire station where the truck was located for at least one and a half years. This truck was used for all emergency runs from the Twyckenham station. Rozwarski was a hydrant man which required him to ride on the back platform. However, when either a driver or officer had a day off, Rozwarski would occasionally act as a driver or officer in his place.

Janet Rozwarski, administratrix of the estate of Rozwarski, brought this action against the City alleging that the City was negligent in failing to provide Rozwarski with a safe place to work in that the truck did not have proper safety equipment such as belts, straps, harnesses or jumpseats, that the drivers were not properly trained, and further that the truck did not have proper lights. At the conclusion of a jury trial, judgment was entered on the verdict against the City.

On appeal, the City contends that the judgment is contrary to law in that Rozwarski assumed the risk of his death as a matter of law.

It is well settled that an employer has a duty to use reasonable care to provide his employees with a reasonably safe working place, including reasonably safe appliances and reasonably competent persons for the service in which he engages them. *Hunsberg v. Wyman* (1966), 247 Ind. 369,

216 N.E.2d 345; *Wabash Railroad Company v. Ray* (1898), 152 Ind. 392, 51 N.E. 920; *Evansville & Terre Haute Railroad Company v. Duel* (1892), 134 Ind. 156, 33 N.E. 355; *Hoosier Stone Co. v. McCain* (1892), 133 Ind. 231, 31 N.E. 956; *W. C. Depauw Co. v. Stubblefield* (1892), 132 Ind. 182, 31 N.E. 796. It is also well settled that at common law an employee assumes such risks ordinarily incident to the discharge of his duties, arising from defects or dangers open and obvious so that he has knowledge of them or in the exercise of reasonable care should have knowledge of them.[1] *Swanson v. City of Lafayette* (1893), 134 Ind. 625, 33 N.E. 1033; *City of Fort Wayne v. Christie* (1901), 156 Ind. 172, 59 N.E. 385; *Hunsberger v. Wyman, supra; Wabash Railroad Company v. Ray, supra; Evansville & Terre Haute Railroad Company v. Duel, supra; Hoosier Stone Co. v. McCain, supra; W. C. Depauw Co. v. Stubblefield, supra.*

In *Indianapolis Traction and Terminal Co. v. Mathews* (1912), 177 Ind. 88, 100, 97 N.E. 320, the Court held that,

"An employe who, either before or after he commences the performance of the contract of employment, has ascertained, or ought in the exercise of ordinary care to have ascertained, that the ordinary hazards of his environment have been augmented by abnormal conditions produced by the negligence of his employer or his employer's representatives or other causes, and has accepted or continued in the employment without making any objection, and without receiving any promise that the abnormal conditions, however caused, will be remedied, is deemed as a matter of law to have assumed the risk thus superadded, and to have waived any right which he might otherwise have had to claim an indemnity for injuries resulting from such risk. The increased danger caused by the negligence of the employer becomes, when it is known, one of the

---

1. The Employer's Liability Act, IC 22–3–9–1 et seq. has modified the common law rule of the assumption of the risk under the conditions specified in the statute. *City of Decatur v. Eady* (1917), 186 Ind. 205, 115 N.E. 577; *Vandalia Railroad Co. v. Stillwell* (1914), 181 Ind. 267, 104 N.E. 289. The application of this statute to the case at hand was precluded by a ruling of the trial court and neither party has challenged that ruling on appeal. We will, therefore, apply the common law.

risks of the employment so far as the employe is concerned."

■ Thus, if the employee has full knowledge of or appreciates the danger or it is as well known to him as to the employer, or it could have been discovered by the use of ordinary care and he continues in his employment, he must be regarded as having assumed the risk of doing so even though the danger may have resulted from an employee's negligence. *Bennett v. Evansville and Terre Haute Railroad Co.* (1912), 177 Ind. 463, 96 N.E. 700.

■ In the case at hand, Rozwarski had been a fireman for 19 years and had been using the fire truck in question for at least one and a half years. His duties included riding on the back platform at well as occasionally driving the truck. The dangers or defects that Rozwarski argues rendered the truck unsafe were not hidden or latent defects. The danger resulting from a defective fire truck and incompetent drivers is obvious and equally open to the observation of Rozwarski and the City. Rozwarski worked on and around the fire truck for one and a half years and by the exercise of ordinary care, could have discovered that the truck did not have adequate safety devices or lighting. Furthermore, as an occasional driver of the fire truck, he would have known the extensiveness of the training of drivers. Under these circumstances, Rozwarski as a matter of law assumed the risk of unsafe working conditions.

■■ The Estate of Rozwarski contends that Rozwarski cannot be held to have assumed the risk of injury which arose from the City's violation of IC 9–8–6–20.[2] However, in order to relieve Rozwarski of the operation of the doctrine of assumption of risk, it must be shown that the violation of the statute was the proximate cause of the injury. It is well settled that even though

the negligence charged is a violation of a statute and so would be negligence per se, no liability attaches unless it appears that there was a causal connection between the negligence charged and the injury, and that such negligence was the proximate cause of the injury. *Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546; *Northern Indiana Transit Inc. v. Burk* (1950), 228 Ind. 162, 89 N.E.2d 905; *Prest-O-Lite Co. v. Skeel* (1914), 182 Ind. 593, 106 N.E. 365; *Steagall v. Dot Mfg. Corp.* (1969), 223 Tenn. 428, 446 S.W.2d 515.

The record reveals that the fire truck was proceeding west on Calvert Street approaching its intersection with Miami Street. The truck proceeded through a red light into the intersection where it was struck by a vehicle traveling in a northerly direction on Miami street. It is uncontradicted that neither vehicle could see the other approaching the intersection. Visual contact could not be made due to buildings on the sides of these streets until one vehicle was in the intersection or until the vehicle had reached the cross walk. Thus, neither driver was able to see the other vehicle until the collision was unavoidable under the other circumstances present. Under this state of facts, the absence of lights meeting the requirements of IC 9–8–6–20 could not be said to have been a proximate cause of the injury. Therefore, the violation of the statute does not bar the application of the doctrine of assumption of risk.

Reversed.

HOFFMAN and STATON, JJ., concur.

---

**2.** IC 9–8–6–20 reads in pertinent part as follows,

"(b) Every bus used for the transportation of school children and every authorized emergency vehicle shall, in addition to any other equipment and distinctive markings required by this act, be equipped with signal lamps mounted as high and as widely spaced laterally as practicable, which shall be capable of displaying the front two (2) alternately flashing red lights located at the same level, and these lights shall have sufficient intensity to be visible at 500 feet in normal sunlight."