**Geoffrey A. STEIN and Bliss & Laughlin Steel, Appellants (Defendants Below),**

**v.**

**Raymond YUNG, Appellee (Plaintiff Below).**

**No. 3–284A45.**

Court of Appeals of Indiana, Third District.

March 11, 1985.

Rehearing Denied May 14, 1985.

---

Edward N. Kalamaros, Thomas Cohen, Edward N. Kalamaros & Associates, Professional Corp., South Bend, for appellants.

Richard F. Joyce, James N. Clevenger, Kizer, Neu, Joyce, Wyland, Humphrey, Wagner & Gifford, Plymouth, for appellee.

STATON, Presiding Judge.

Geoffrey A. Stein and Bliss & Laughlin Steel appeal from judgment entered on a verdict in favor of plaintiff Raymond Yung.

The sole issue presented for review is whether the trial court erred in refusing to give Stein's tendered instruction on the sudden emergency doctrine.

Affirmed.

■ When the trial court refuses to give a jury instruction tendered by a party, our task on review is to determine: whether the tendered instruction correctly states the law; whether there was evidence within the record to support giving the instruction; and, whether the substance of the instruction was adequately covered by other instructions which were given. *Fall v. White* (1983), Ind.App., 449 N.E.2d 628, 635. An error in failing to give an instruction will not be presumed fatal unless the complaining party can show prejudice to substantial rights. *Indianapolis Transit System, Inc. v. Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543, 549.

The record shows that around 5:00 o'clock p.m. on May 15, 1979, Stein, a truck driver for Bliss & Laughlin Steel, was driving his tractor trailer westbound on U.S. 30 in Marshall County. The weather was clear and sunny and the pavement was dry.

Stein testified he was traveling 55 miles per hour in the right hand lane when he approached another car also moving at about 55 miles per hour in the right lane. Stein decided to pass the car ahead of him, checked to see if traffic was clear and noticed Yung's pick-up truck about three quarters of a mile ahead in the left hand lane, also westbound and traveling, according to Stein's estimate, at about 50 miles per hour. Stein turned on his turn signal and pulled out to pass. He related the events leading up to the accident as follows:

"By the time I was trying to clear the car in my right hand lane the pick-up truck was too close. He was not going 50 miles an hour. He was proceeding to make a left hand turn which I did not know. The sun was definitely bright coming out. At the time I looked at it, it was too late. I hit him. The brakes were applied, I did notice that I was going to hit him so I tried to stop, but there was nothing I could do. The truck was 25,000 pounds empty. When it

starts sliding down the road you can't stop it."

and

"The vehicle I was passing was still on the right hand corner of my trailer. If I had turned over to get in the right hand lane he would have been hit."

William Wright, the driver of the car Stein was attempting to pass, testified that he plainly saw Yung's pick-up ahead with brake lights and turn signal on, slowing to make a left turn. He also saw Stein approaching very fast from behind and said, "... at that time I did realize that he couldn't go around me because he would hit the pickup truck which I saw very plain there. There wasn't enough room between my car and Mr. Yung's truck for him to pass me and I was getting ready to pull off the side of the road to avoid being hit in the rear end by the semi trailer."

Stein argues on appeal that his theory of the case was that his vision was momentarily obscured by the sun, preventing him from seeing Yung's truck slowing to turn left in time to avoid hitting Yung from behind. He contends this constituted a sudden emergency or peril which entitled him to have the jury instructed as follows:

"You are instructed that where a person is confronted with a sudden emergency not of his own making without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if he exercises such case [*sic*] as an ordinary prudent person would exercise when confronted by a like emergency, he is not liable for an injury which resulted from his conduct, even though another course of conduct would have been better or safer or might even have avoided the accident."

Yung counters that there was insufficient evidence of a sudden emergency such as would warrant giving an instruction on the doctrine. Since the parties do not dispute that the tendered instruction was a correct statement of the law, we proceed to the second step of our review and determine whether the instruction was warranted by the evidence.

▪ The sudden emergency doctrine is an affirmative defense to negligence or contributory negligence. It simply recognizes that the law of evidence does not require the same accuracy of judgment of one who has innocently been deprived of time to deliberate his actions as it imposes on one who has the opportunity for deliberation. *Lovely v. Keele* (1975), 166 Ind.App. 106, 333 N.E.2d 866, 868. An instruction on the doctrine is warranted where the evidence or inferences therefrom support such a theory. *See Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 122. In order to invoke the doctrine a party must prove the following facts:

(1) That the appearance of danger or peril was so imminent that he had no time for deliberation;

(2) That the situation relied upon to excuse any failure to exercise legal care was not created by his (appellant's) own negligence;

(3) That his conduct under the circumstances was such as the law requires of an ordinarily prudent man under like or similar circumstances.

*Taylor v. Todd* (1982), Ind.App., 439 N.E.2d 190, 193.

▪ While the question of sudden emergency is generally an issue for the determination of the jury, *Hedgecock v. Orlosky* (1942), 220 Ind. 390, 44 N.E.2d 93, 96, the threshold determination of whether the doctrine applies and warrants an instruction rests with the trial court.

▪ The evidence presented at trial falls short in two respects in our opinion. In the first place, Stein's testimony does not disclose that he perceived a perilous situation and acted without time for deliberation. On the contrary, he looked ahead, saw Yung's truck, estimated its speed and distance and decided he had room to pull out and pass Wright's car and pull back in

before he reached Yung. Further, nothing in the evidence before the jury directly or by inference suggested that before or after Stein pulled out to pass, he was blinded by the sun or lost sight of Yung's truck. Stein argues in his brief that this was the case and his pleadings, which were incorporated in preliminary instructions to the jury, posed this theory, but pleadings are not evidence which the jury may consider, *Ewing v. Timmons* (1963), 135 Ind.App. 274, 193 N.E.2d 497, and the evidence simply did not support this theory.

Secondly, the only evidence regarding Yung's actions was that he was in the left lane approaching an intersection, that he braked, signalled and slowed to make a left turn. There was no evidence that his actions were sudden or unexpected or difficult to see. None of the foregoing evidence or lack thereof establishes an emergency situation created without default of Stein. What it does present is evidence from which the jury was required to determine whether Stein was negligent in judging his ability to pass around Wright and return to the right hand lane before reaching Yung.

■ Absent sufficient evidence to establish at least a question on two of the elements necessary to invoke the sudden emergency doctrine, there was no error in refusing to give the jury an instruction on the doctrine. The trial court's judgment is affirmed.

HOFFMAN and GARRARD, JJ., concur.