**KUTCHE CHEVROLET–OLDSMOBILE–PONTIAC–BUICK, INC., Appellant–Defendant,**

v.

**ANDERSON BANKING COMPANY, Appellee–Plaintiff.**

**No. 29A05–9109–CV–287.**

Court of Appeals of Indiana, Fifth District.

Aug. 24, 1992.

Gregory L. Noland, Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, for appellant-defendant.

Thomas M. Beeman, Busby, Austin, Cooper & Farr, Anderson, for appellee-plaintiff.

RUCKER, Judge.

In this summary judgment action we are called upon to determine whether a personal check is equivalent to a "cash down payment" in the context of a retail installment contract. We find a dispute of material fact exists and therefore reverse.[1]

Sophie and Richard Roweton, who are not parties to this action, entered into a retail installment contract with Kutche Chevrolet–Oldsmobile–Pontiac–Buick, Inc., (Dealership) for the purchase of a 1989 Chevrolet van. The installment contract indicated the Rowetons' down payment for the van consisted of a net trade-in allowance on another automobile for $1,334.49 and a "cash down payment" of $2,222.51. However, the Rowetons did not give Dealership actual cash as a part of the down payment, rather they gave Dealership a personal check drawn on the Rowetons' credit union in the amount of $2,222.51.

Dealership assigned the installment contract to the Anderson Banking Company (Bank) which financed the van in the amount of $31,252.42. The assignment was without recourse; thus, Dealership was not a guarantor or endorser in the event of a default by the Rowetons. Thereafter, the Rowetons' personal check was returned for insufficient funds and the Rowetons later defaulted on their monthly installment payments. As a result, Bank repossessed the van and with the assistance of Dealership the van was sold at auction. However, after the sale a deficiency existed and Bank filed a complaint against Dealership seeking judgment in the amount of the deficiency plus cost and expenses including attorney's fees. The complaint alleged breach of express warranties concerning Dealership's receipt of a "cash down payment." Bank filed a motion for summary judgment which the trial court granted. Dealership now appeals.

 When reviewing the grant of a summary judgment motion, our standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Farm Bureau Co-op. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh. denied.* We stand in the shoes of the trial court. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *ITT Com. Finance v. Union Bank and Trust* (1988), Ind.App., 528 N.E.2d 1149. In addition to considering whether a genuine issue of material fact exists, this court must determine whether the law was correctly applied. *Farm Bureau, supra.*

I.

Dealership contends the trial court erred in granting summary judgment because no breach of warranty occurred as a matter of law. According to Dealership, its receipt of the Rowetons' personal check rather than actual cash does not violate the warranty provisions in the installment loan

---

1. Dealership also argues the trial court erred in entering summary judgment because Bank failed to demonstrate the breach of warranty was the cause of Bank's damage. Because we reverse we decline to address this issue.

contract. Bank counters a personal check is not the same as cash and therefore the Rowetons did not make a cash down payment as shown on the face of the contract. Therefore, argues Bank, Dealership breached the warranty provision. The provision in question provides in relevant part:

Seller warrants: ...

(c) the statements contained in this contract are true and correct;

(d) the down payment was made by the buyer in the manner stated on the face of the contract and no part of the down payment was loaned or paid to the buyer by seller or seller's representatives;

*Record* at 17.

■■ Generally construction of a written contract is a question of law for the trial court and therefore summary judgment is particularly appropriate. *McCae Management Corp. v. Merchants National Bank and Trust Co. of Indianapolis* (1990) Ind.App., 553 N.E.2d 884, *trans. denied.* However, if reasonable persons could find the contract susceptible of more than one construction, and the meaning of the contract must be determined by extrinsic evidence, then the existing ambiguity makes summary judgment inappropriate. *Id.* If the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the facts necessary to construe the contract. *Seibert v. Mock* (1987), Ind.App., 510 N.E.2d 1373. Consequently, whenever summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Midwestern Indem. Co. v. Leffler Const. Co., Inc.* (1984) Ind.App., 463 N.E.2d 1130, 1133.

In the case before us the trial court determined Dealership had breached the terms of the written warranty agreement, in part, because Dealership received a personal check for the down payment in the amount warranted rather than actual cash. However, this fact standing alone does not amount to a breach of warranty as a matter of law because the term "cash down payment" is ambiguous and the ambiguity can not be resolved without the aid of facts extrinsic to the record. On the one hand, as Bank points out, cash has been defined as "money or its equivalent paid promptly after purchasing." *Appellant's Brief* at 5 quoting Webster's New Collegiate Dictionary, 1977. A personal check is not the equivalent of money. *See* 54 Am.Jur.2d Money § 13 (normally, the term money does not include bank notes, checks, and other negotiable instruments.) On the other hand cash has also been defined as "currency and coins, *negotiable checks,* and balances in bank accounts." Black's Law Dictionary, 1990. (emphasis added).

Although there are no Indiana cases which address the precise issue before us, or which address the meaning of cash, jurisdictions which have addressed the issue recognize the inherent ambiguity of the word cash. For example, the Texas Supreme Court in *Stewart v. Selder,* (1971), Tex., 473 S.W.2d 3, noted that cash in its strictest sense refers to coins and paper money. *Id.* at 3. However, the Texas court found that under the circumstances of the case, cash included checks. *Id.* at 8–10.

■ In construing a contract we must be guided by the intent of the parties and ordinarily that intent is determined by examining the four corners of the written document. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838. However, rules of contract construction as well as extrinsic evidence may also be employed in giving effect to the parties' reasonable expectations. *R.R. Donnelley & Sons v. Henry–Williams, Inc.* (1981), Ind.App., 422 N.E.2d 353.

■ In this case the installment loan contract, even when read as a whole, provides no guidance concerning the parties intended use of the term "cash down payment." Further, there were no facts presented to the trial court by way of testimony, depositions on file, affidavits or interrogatories presented in support or opposition to Bank's motion for summary judgment which would indicate the parties' in-

tended use of the term "cash down payment." For example, there is no indication whether or not the acceptance of checks as down payments is a custom and practice of the automobile trade or whether in the past Bank has accepted or rejected checks as down payment from Dealership. Such extrinsic facts may have a bearing on the parties intent in the use of the contract term "cash down payment."

Bank counters that even if there is ambiguity whether a personal check is considered "cash", there is no ambiguity whether a personal check constitutes "payment." According to Bank a payment discharges an obligation or debt. *Merchants Nat. Ban & Trust Co. v. Winston* (1959), 129 Ind.App. 588, 159 N.E.2d 296; *Egbert v. Egbert* (1956), 235 Ind. 405, 132 N.E.2d 910. Thus, continues Bank, because the Rowetons' personal check was returned for insufficient funds the debt was not discharged and therefore the check could not be deemed a payment.

We have no quarrel with the proposition that a bad check does not discharge a debtor's obligation; the Rowetons may still be liable to Bank for the balance of its loan. However, the Rowetons' obligation does not answer the question whether Dealership breached the terms of the warranty by accepting a check as down payment. If the parties here intended that a check is acceptable as cash for purposes of a down payment, then there has been no breach of warranty; otherwise a breach of warranty has occurred.

Because there is a genuine issue of material fact concerning the intent of the parties as to the meaning of the contract term "cash down payment", summary judgment is inappropriate.

Judgment reversed.

BARTEAU and STATON, JJ., concur.