Janet L. MANNON, Appellant–Plaintiff,

v.

**HOWMET TRANSPORT SERVICE, INC., Howmet Turbine Components Corporation, and Thermo King of Indiana, Inc., Appellees–Defendants.**

No. 50A05–9306–CV–219.

Court of Appeals of Indiana, Fifth District.

Oct. 17, 1994.

Donald E. Wertheimer, South Bend, for appellant.

Edward L. Murphy, Daniel G. McNamara, Miller Carson Boxberger & Murphy, Fort Wayne, for Appellees, Howmet Transport Service, Inc. and Howmet Turbine Components Corp.

## OPINION

RUCKER, Judge.

In this employment related personal injury action Plaintiff-appellant Janet L. Mannon appeals the grant of summary judgment in favor of Defendant-appellee Howmet Transportation Service, Inc. (Howmet). Mannon raises three issues for our review which we consolidate into one: whether the trial court erred in entering summary judgment in Howmet's favor.

We reverse.

Howmet manufactures component parts for gas turbine engines. Prior to manufacturing the actual component parts, Howmet ships to its customers replicas of the parts. Because the replicas are made of wax the shipping is done by way of refrigerated trailers. Howmet leases the trailers and semi-tractors that pull them from Whiteford National Lease, Inc. (Whiteford). The trailers are equipped with both internal and external temperature monitoring devices. The internal device, known as a Data Logger, is located on the left sidewall near the back of the refrigeration unit sufficiently high to prevent the device from being struck by forklifts used in loading cargo. When delivering the waxed replicas, tractor/trailer drivers are required to periodically check the external temperature device and to occasionally take a reading from the internal device.

Howmet does not employ its own drivers. Rather, the drivers are supplied to Howmet through a contractual arrangement it has with a company known as Driveco. At all times relevant to this action Mannon was employed by Driveco and drove one of the trucks owned by Whiteford and leased to Howmet. During the week prior to January 22, 1988, Mannon reported to Whiteford that the external temperature device was not operating properly. The following week Mannon was assigned to pull the same trailer. On her return trip from Oklahoma to Indiana, Mannon noticed erratic readings on the external temperature monitoring device. As a result she decided to check the internal Data Logger. To reach the device Mannon attempted to stand on a crate which tipped over resulting in Mannon falling and thereby sustaining various injuries.

In May, 1990, Mannon filed a complaint against Howmet as well as Thermo King, Inc., the maker of the Data Logger. Thermo King ultimately settled and is no longer a party to this action. In her complaint Mannon alleged various acts of negligence on the part of Howmet. Later Mannon abandoned her numerous theories and proceeded on the notion that Howmet negligently provided her a wooden box which was an unsafe means of access to the internal monitoring device, and negligently failed to provide a ladder to gain access to the device. After both parties conducted discovery Howmet moved for summary judgment which the trial court granted. This appeal arose in due course.

When reviewing the grant of summary judgment our well settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Montgomery County Farm Bureau Co-op Ass'n, Inc. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh'g denied.* We must consider the pleadings and evidence sanctioned by Indiana Trial Rule 56(C) without deciding its weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.*

The tort of negligence is comprised of three elements: 1) a duty owed to the plaintiff, 2) a breach of that duty by the defendant, 3) which proximately caused plaintiff's damage. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, *reh'g denied.* Although breach of duty and proximate causation are generally questions of fact to be determined by the trier of fact, whether a duty exists in the first instance is a question of law to be determined by the court. *Rubin v. Johnson* (1990), Ind.App. 550 N.E.2d 324, *trans. denied.*

In this case Mannon essentially contends that Howmet had a duty to provide her a safe place in which to work. Mannon argues that Howmet breached that duty in either of two ways: (a) providing her a wooden box which was an unsafe means of access to the

internal monitoring device, or (b) failing to provide a ladder to gain access to the device. Howmet counters that it owed no duty to Mannon because she was not a Howmet employee. Rather, Howmet contends Mannon was employed by Driveco and drove one of the trucks owned by Whiteford and leased to Howmet.

Howmet's contention that it owed no duty to Mannon because it was not Mannon's employer is not persuasive. A person may be the employee of two employers, not joint employers, at one time as to one act, if the service to one does not involve abandonment of service to the other. *New York Central R.R. v. Northern Ind. Pub. Serv. Co.* (1966), 140 Ind.App. 79, 221 N.E.2d 442, 446 citing the Restatement (Second) of Agency § 226; *Standard Oil Co. v. Soderling* (1942), 112 Ind.App. 437, 42 N.E.2d 373.

There is no question here that Mannon was the employee of Driveco who paid Mannon's wages and had the ability to fire her. Although the right to discharge and payment of wages are indicia of an employer/employee relationship, *Furr v. Review Bd. Of Ind. Employment Sec. Div.* (1985), Ind.App., 482 N.E.2d 790, it is not dispositive and does not end the inquiry. The general test in determining the existence of an employer/employee relationship is the right to direct and control the employee. Also at least one indicia of the relationship is the employer supplying the tools and equipment to be used by the employee. *Id.* at 794 citing *Gibbs v. Miller* (1972), 152 Ind.App. 326, 283 N.E.2d 592, *trans. denied.* Here Mannon drove the truck to locations dictated by Howmet. Howmet supplied Mannon with a portable printer as a part of the internal monitoring device and Howmet instructed Mannon to periodically check the temperature on the external as well as the internal monitoring

devices. Further, there was nothing before the trial court and thus nothing before this court indicating that Mannon's service to Driveco involved the abandonment of her service to Howmet. For purposes of this action Mannon was the employee of both Driveco and Howmet.

Because Mannon was a Howmet employee, it is clear Howmet owed her a duty of care. The law is well settled that an employer has a duty to use reasonable care to provide its employees with a reasonably safe working place, including reasonably safe appliances. *City of South Bend v. Estate of Rozwarski* (1980), Ind.App., 404 N.E.2d 19, *reh'g denied.* The question here is whether Howmet breached its duty to provide Mannon with a safe work environment. The facts are in dispute. In its entry of judgment the trial court noted that any duty Howmet owed to Mannon was satisfied when Howmet provided Mannon with a 300–pound capacity step ladder to gain access to the trailer and temperature monitoring devices. This determination was based upon the Rule 56(C) materials provided to the trial court by Howmet. However, in her affidavit in opposition to Howmet's motion for summary judgment, Mannon asserts that prior to the accident Howmet retrieved the ladder so that it could be used by another Howmet employee.[1] Whether Howmet did or did not provide Mannon with a ladder for access to the internal temperature monitoring device goes to the heart of the breach of duty issue. Summary disposition on this point is not appropriate. *See Rubin,* 550 N.E.2d at 330, (existence of a duty is question of law, but breach of duty is generally a question of fact).

Judgment reversed.

---

1. Howmet contends the affidavit should not be considered because it was never designated to the trial court and it was not timely filed. We observe that Howmet never objected to the timeliness of the affidavit, thus this argument is waived. *Woods v. Brown County Plan Com'n* (1983), Ind.App., 446 N.E.2d 973. Further, there is no particular form a party must use in order to meet the designation requirement. *Mid State Bank v. 84 Lumber Co.* (1994), Ind.App., 629 N.E.2d 909. As long as the trial court is apprised of the specific material on which the parties rely either in support of or in opposition to a summary judgment motion then the designation requirement has been met. *Id.* Although Mannon did not file a pleading entitled "Designated Materials," it was abundantly clear to the trial court that Mannon was specifically relying on her "Affidavit In Opposition To Defendant Howmet's Motion For Summary Judgment." Indeed, the trial court's order stated in pertinent part: "The Court, having considered the Defendant's Motion for Summary Judgment, the Affidavits and Memorandums in Support of the Parties' respective positions, finds: ...." *Record* at 418.

SHARPNACK, C.J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent for the reason that the majority erroneously concludes that "[f]or purposes of this action Mannon was the employee of both Driveco and Howmet." *Maj. op.* at 73.

Although an individual may be the employee of two employers, at one time as to one act, *see New York Central R.R. v. Northern Ind. Pub. Serv. Co.* (1966), 140 Ind.App., 79, 221 N.E.2d 442, the record supports a determination that Mannon was only Driveco's employee. Howmet, therefore, owed no duty to provide Mannon with a safe work environment.

Driveco paid Mannon's wages, and all of the drivers answered to Driveco. Only Driveco could hire, fire or discipline its drivers, and the record shows that Howmet merely leased the services of the drivers. As Mannon points out, Howmet did not own the truck that shipped its replicas, including the truck Mannon used at the time of the accident. Whiteford owned the truck, and it was responsible for all maintenance and repairs of the vehicle and equipment, except for the temperature monitoring device, which was Thermo King's responsibility. Although Howmet owned the temperature monitor, that device and all of the remaining equipment on the refrigeration unit were supplied, positioned and installed by Thermo King. It was logical for the trial court to conclude as a matter of law that Driveco was Mannon's only employer.

I also agree that the trial court properly entered summary judgment in Howmet's favor because there was no evidence creating a question of fact as to whether Howmet *assumed* a duty to Mannon. Isolated instances of providing safety precautions to workers at the job site have been held insufficient as a matter of law to create a factual question for a jury as to whether a duty has been assumed. *See Robinson v. Kinnick* (1989), Ind.App., 548 N.E.2d 1167; *Teitge v. Remy Construction Co., Inc.* (1988), Ind.App., 526 N.E.2d 1008; *Lukowski v. Vecta Education-*

*al Corp.* (1980), Ind.App., 401 N.E.2d 781, *trans denied.*

In *Robinson,* the plaintiff-roofer was injured when he fell to the ground after slipping on ice. Robinson admitted seeing the ice prior to the accident. He sued the homeowners claiming that they negligently failed to provide him with adequate safety equipment or supervision. Summary judgment was entered for the homeowners on the ground that they owed no duty to Robinson. We affirmed, finding as a matter of law, that the homeowners had not assumed a duty to provide Robinson with a safe work place. In distinguishing other cases which reached a contrary result, we observed that:

> "In each of the above cases, the entity sought to be charged with the assumption of a duty appointed safety inspectors, held regular safety meetings, inspected the job site on a daily basis, and directed that certain safety precautions be taken on the job site. These factors reveal a deliberate attempt to control or actively supervise safety at the job site. In the case at bar, however, the evidence in the record shows that the [homeowners] did not appoint a safety director to supervise the job site, did not hold safety meetings, and did not prescribe any safety precautions to be taken on the projects or provide written safety rules to persons on the site. Further, the [homeowners] did not conduct daily inspections of the project in general or of the roof in particular or advise any of the workers at the site about what safety equipment to utilize.... There was insufficient evidence as a matter of law to create a factual question for a jury as to whether the [homeowners] assumed a duty toward Robinson."

*Id.* at 1169 (emphasis supplied).

Despite evidence that the homeowners had taken the affirmative step of nailing toe boards to the area of the roof where the accident occurred, we noted that:

> "It is true that various safety equipment was present at the job site. The [homeowners], however, did not require that the independent contractors utilize the equipment but rather merely made it available

for their use if they so chose. The [home-owners] did not maintain written rules requiring the safety equipment be used or conduct safety meetings advocating the use of equipment. *There is absolutely no evidence from which a reasonable juror could conclude that based upon this conduct the [homeowners] assumed a duty to provide Robinson with a safe place to work.* With respect to the toe boards nailed on the roof, in the absence of any other evidence indicating the contrary, *one or two instances of safety precautions taken by the defendant does not raise a jury question as to whether a duty was assumed."*

*Id.* at 1170 (emphasis supplied).

As in *Robinson*, the record demonstrates that there were insufficient facts to present a jury question. While I am sympathetic to Mannon's plight, the record before us demonstrates that it was not Howmet's responsibility to provide her with a safe work environment, and the evidence does not show that Howmet assumed such a duty.

I would affirm the trial court's entry of summary judgment in favor of Howmet.